The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Leroy M. GARDENHIRE, Jr., Defendant–Appellant.

No. 93CA0323.

Colorado Court of Appeals, Div. IV.

Feb. 9, 1995.

Rehearing Denied March 23, 1995.

Certiorari Denied Oct. 10, 1995.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John J. Krause, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colo. State Public Defender, Frances S. Brown, Chief Appellate Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge NEY.

Defendant, Leroy Gardenhire, Jr., appeals the judgment entered on a jury verdict finding him guilty of two counts of first degree murder, two counts of first degree kidnapping, second degree assault, and crime of violence. We affirm.

Defendant was tried with his son, co-defendant Leroy Gardenhire III, in January 1993. Prior to trial, defendant moved to continue the trial date because the public defender who had originally been assigned would be unavailable for trial. The trial court denied the defendant's motion to continue as well as his motion to sever. Subsequently, another public defender replaced the original public defender in representing defendant.

During jury selection, a prospective juror informed the court that she had been exposed to a media report about events in another case which gave her concern. The court spoke with the juror and learned that she had expressed her concern to other women on the jury panel.

The court recalled the panel and explained the juror's exposure to the media report. The court asked if any member of the panel had concerns that he or she wished to discuss in chambers. There was no response to the court's inquiry. The court did not poll the jury panel.

Pursuant to § 16–10–104, C.R.S. (1986 Repl.Vol. 8A) and § 16–10–105, C.R.S. (1994 Cum.Supp.), because there were two defendants and two alternate jurors impaneled, the court granted fifteen peremptory challenges to each side. After exercising one peremptory challenge jointly, the defendants could not agree as to the remaining chal-

lenges. In response, the trial court permitted each defendant to exercise seven challenges independently.

After the parties exercised these peremptory challenges, the trial court concluded that it might have improperly refused a defense challenge for cause, and to cure that possible error, it granted the prosecution and each defendant one additional peremptory challenge. Both defendants exercised all the permitted peremptory challenges.

## I

### CONTINUANCE

■ Defendant contends that the trial court abused its discretion by denying his motion to continue. We disagree.

■ The grant or denial of a motion to continue "rests within the sound discretion of the trial court and will not be overturned on review absent an abuse of that discretion and a showing of actual prejudice by the defendant." *People v. Schuett,* 819 P.2d 1062, 1067 (Colo.App.1991), *rev'd on other grounds, People v. Schuett,* 833 P.2d 44 (Colo.1992).

The defendant does not point to any specific instances in the record in which he was prejudiced by the denial of his motion. The record does not reveal how much work the original public defender had done on defendant's behalf before substitute counsel assumed responsibility for the case. Rather, the record reveals only that the original public defender had represented the defendant at the preliminary hearing, the arraignment, and at a motions hearing. Absent any evidence of prejudice based on the public defender's replacement with another public defender, we perceive no reversible error in the trial court's ruling.

Defendant further contends that the trial court's refusal to grant his motion to continue violated his Sixth Amendment right to effective assistance of counsel. We disagree.

■ Although indigent defendants have a Sixth Amendment right to counsel, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), such defendants do not have a right to counsel of their choice.

*Williams v. District Court,* 700 P.2d 549 (Colo.1985).

Defendant has not set forth any evidence in the record to support his contention that the denial of his motion to continue rendered the assistance of counsel ineffective. Thus, the substitution of one public defender with another does not constitute a violation of defendant's Sixth Amendment right to effective assistance of counsel.

## II

### SEVERANCE

■ Defendant contends that the trial court erred by denying his motion to sever. We disagree.

■ A motion to sever that is not based on a mandatory ground for severance is addressed to the sound discretion of the trial court, and the denial of such motion will not be overturned absent a showing that the denial was an abuse of discretion which resulted in prejudice to the defendant. *People v. Durre,* 713 P.2d 1344 (Colo.App.1985).

■ A criminal defendant is entitled to severance as a matter of right pursuant to § 16–7–101, C.R.S. (1986 Repl.Vol. 8A) "if there is evidence which is admissible against one but not all of the parties and that evidence is prejudicial to the defendant against whom the evidence is not admissible." *People v. Lesney,* 855 P.2d 1364, 1366 (Colo. 1993).

We recognize that if the trial court had exercised its discretion to grant defendant's motion to sever, many of the issues presented on appeal would not have arisen. However, we conclude that the mandatory severance requirements contained in § 16–7–101 were not met and that the trial court did not abuse its discretion in denying defendant's motion.

At a pre-trial motions hearing, the defendant expressed concerns about the prejudice which could result from a denial of the motion to sever. However, defendant has not set forth evidence in the record which reveals that he was prejudiced by the court's denial of the motion. Moreover, as the trial court's

conclusion that the defenses were not antagonistic is supported by the record, we perceive no ground for reversal.

## III

### PEREMPTORY CHALLENGES

#### A

Defendant contends that the trial court committed reversible error by refusing to provide additional peremptory challenges to each defendant. We disagree.

Section 16–10–104(1), C.R.S. (1986 Repl. Vol. 8A) provides that, in capital cases in which there is one defendant, the state and the defendant are each entitled to ten peremptory challenges. The statute further provides that if there is more than one defendant, each side shall be entitled to an additional three peremptory challenges for each defendant after the first. If alternate jurors are impaneled, each side is entitled to one peremptory challenge for each alternate to be selected. Section 16–10–105; Crim.P. 24(e). The exercise of peremptory challenges by multiple defendants is to be made and considered as the joint peremptory challenge of all defendants. Section 16–10–104(1).

Defendant maintains that, under the facts of this case, in which defendant and co-defendant have conflicting interests, the court's allocation of fifteen peremptory challenges, to be made and considered as the joint challenges of the co-defendants, violated his right to effective assistance of counsel and his right to confidentiality of the attorney-client relationship.

Crim.P. 24(d)(3) provides that the court may, at any time, for good cause shown, *add* peremptory challenges to either or both sides. *People v. Heller,* 698 P.2d 1357 (Colo. App.1984), *rev'd on other grounds, Heller v. People,* 712 P.2d 1023 (Colo.1986).

Although it would not have constituted an abuse of discretion to have done so, the court did not determine that the defendants' difficulty in exercising their peremptory challenges jointly constituted good cause shown for purposes of Crim.P. 24(d)(3). We conclude that finding did not constitute an abuse of discretion and will not disturb the decision of the trial court on appeal.

#### B

■ Defendant contends that the court's refusal to grant each party twelve peremptory challenges violated his right to due process of law because the co-defendant and the prosecution exercised peremptory challenges against defendant's interest and limited defendant's ability to establish a jury consistent with his defense. We disagree.

■ The accused in a criminal trial has a fundamental right to a fair trial by an impartial jury. *People v. Gurule,* 628 P.2d 99 (Colo.1981). A procedural mechanism available to the accused to secure a balanced and impartial jury is the exercise of peremptory challenges. *People v. Macrander,* 828 P.2d 234 (Colo.1992).

The essence of defendant's due process argument is that, in contrast with the seven peremptory challenges allotted to defendant, the People and co-defendant had a total of twenty one peremptory challenges and that these challenges were exercised against the defendant's interest. Thus, defendant argues that the trial court's refusal to grant each defendant twelve peremptory challenges directly impacted his right to a fair and impartial jury. However, defendant has not indicated any facts that would support the conclusion that the impaneled jury was not fair and impartial.

We realize that from the perspective of a criminal defendant, there are certain inherent disadvantages to being tried jointly with a co-defendant. For example, the strategies and theories of the case presented by a co-defendant may detract from those advanced by the defendant.

Nevertheless, here, the number of peremptory challenges exercised by defendant was consistent with his underlying statutory rights as a defendant jointly tried. The defendant's independent exercise of seven challenges comports with fundamental fairness because the exigencies of a joint trial have led the General Assembly to place a limit on the number of challenges to be exercised by

such defendants. Thus, we perceive no violation of defendant's right to due process of law. *See People v. King*, 240 Cal.App.2d 389, 49 Cal.Rptr. 562, *cert. den'd, King v. California*, 385 U.S. 923, 87 S.Ct. 236, 17 L.Ed.2d 146 (1966).

## IV

### IMPROPER PEREMPTORY

■ Defendant contends that his right to equal protection and right to a fair and impartial jury were violated when the court denied his challenge of the prosecutor's alleged striking of potential jurors on racial grounds. We disagree.

■ To establish a prima facie case of purposeful discrimination in selection of a jury solely on evidence concerning the prosecutor's exercise of peremptory challenges, a defendant must first show that he is a member of a cognizable racial group. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Next, the defendant must show that the prosecutor has exercised peremptory challenges to remove potential jurors from the venire on account of their race. *See People v. Cerrone*, 854 P.2d 178 (Colo.1993). Finally, the defendant must show that the relevant facts and circumstances of the case raise an inference that the prosecutor used that practice to exclude a member or members of the venire on account of their race. *Batson v. Kentucky, supra.*

■ Since resolution of a *Batson* challenge largely turns on evaluating credibility, a reviewing court should exercise great deference with regards to a trial court's decision on such a challenge. *Batson v. Kentucky, supra.*

Here, the court's denial of the defendant's *Batson* challenge did not violate his right of equal protection and right to a fair trial and impartial jury. The record supports the trial court's conclusion that the defendant failed to make a prima facie showing of intentional discrimination. For instance, the defendant did not present facts which create an inference of discrimination on the basis of the prosecutor's pattern of excluding black members of the venire. Nor did the defendant direct our attention to any of the prosecutor's questions and statements during *voir dire* that would support an inference of discriminatory purpose.

Alternatively, even if we were to assume that defendant made a prima facie showing of discriminatory selection of the venire, the state presented a neutral explanation for challenging a member of the venire.

■ In response to a *Batson* challenge, it is not necessary for the state's explanation to rise to the level justifying exercise of a challenge for cause. Instead, the state must merely articulate a neutral explanation which is related to the particular case being tried. *Batson v. Kentucky, supra.* This standard was met here.

## V

### PUBLICITY

■ Defendant contends that the trial court erred in refusing to poll the jury regarding exposure to allegedly prejudicial publicity. We disagree.

■ The proper procedure for addressing allegations of prejudicial publicity during trial is set forth in *Harper v. People*, 817 P.2d 77 (Colo.1991). The court must first determine if the media coverage has a potential for unfair prejudice. In making this determination, the court should focus upon whether the content of the media report is inherently prejudicial. Second, the court must canvass the jury to find out if they have learned of the potentially prejudicial publicity. Third, the court must "examine individually exposed jurors—outside the presence of other jurors—to ascertain how much they know of the distracting publicity and what effect, if any, it has had on the juror's ability to decide the case fairly." *Harper v. People, supra*, at 83.

■ The trial court has broad discretion to determine if the media report prejudiced the defendant's right to a fair trial. *See Harper v. People, supra.*

We conclude that the trial court's decision not to poll the jury did not constitute an

abuse of discretion. First, the media report to which one of the prospective jurors was exposed did not concern the defendant's case. As there is no indication that it was inherently prejudicial, the court's inquiry of the jury panel as a group was sufficient. Second, the trial court had no reason to believe that a poll of the panel would be helpful because none of the members of the panel accepted the court's offer to discuss the matter in chambers.

The judgment is affirmed.

PLANK and RULAND, JJ., concur.